## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID SAFRAN,

                                    Plaintiff,

         vs.                                              Case No.

                                                          **Plaintiff Demands Trial by Jury**

THE LAUNDRESS, LLC and ABC CORP. #1-
50,

                                    Defendants.

## COMPLAINT

Now comes the Plaintiff, DAVID SAFRAN, by and through his attorneys, Gallagher Law Offices LLC, and complaining of Defendants, THE LAUNDRESS, LLC and ABC CORPORATION #1-50 and states for his Complaint the following:

## INTRODUCTION

1.     This case arises out of defective laundry and household cleaning products, The Laundress products, which were marketed, sold, manufactured, and distributed by Defendant The Laundress, LLC and ABC CORPORATION #1-50 (collectively, "Defendants") which proximately caused the serious and permanent injuries of Plaintiff David Safran.

2.     The Laundress products marketed, sold, manufactured, and distributed by Defendants were at all relevant times contaminated with harmful bacteria which proximately caused Plaintiff's serious and permanent injuries.

3.     Plaintiff brings this action under the laws of the State of Illinois.

## JURISDICTION

4.    Jurisdiction exists pursuant to 28 U.S.C. §§ 1332 which provides original jurisdiction for Plaintiff's claims as all parties are citizens of different states and the amount in controversy exceeds $75,000. Supplemental jurisdiction over Plaintiff's state law claims is pursuant to 28 U.S.C. § 1367.

5.    Venue is proper in the Northern District of Illinois in that many of the events and injuries complained of herein all occurred in the Northern District of Illinois.

## PARTIES

6.    At all times relevant, Plaintiff David Safran ("Safran" or "Plaintiff") was a resident of the State of Illinois.

7.    At all times relevant, Defendant The Laundress LLC ("Laundress") is a Delaware Corporation with its principal place of business in New York, New York.

8.    Defendant ABC Corp. #1-50 (fictitious names) are corporations, partnerships, sole proprietorships, or other business entities, however many in number, who designed, manufactured, tested, labeled, marketed, sold, supplied and/or distributed Laundress products from 2019 to 2022.

## FACTS

I.    **Defendants' Products, Marketing, and Misrepresentations**

9.    Laundress was founded in 2004 and offered "a collection of fabric-specific products scented with sophisticated fragrances that extend the lifespan of clothing and eliminate the chemicals and cost of dry cleaning." On its website, Laundress claims it "introduce[ed] a pioneering collection of fabric-specific scented products with sophisticated fragrances that extend the lifespan of clothing and eliminate the chemicals and cost of dry-cleaning." After it was

founded, Laundress eventually became "known for its luxury, non-toxic and cruelty free soaps and detergents."

10.    Defendants Laundress manufactured, distributed, marketed, and sold millions of contaminated Products throughout the United States at premium prices based on a widespread advertising campaign highlighting the Products' purported natural, non-toxic, eco-friendly, and green attributes. For example, one gallon of Laundress Signature Detergent costs approximately $94 per unit versus one gallon of Tide Original laundry detergent which sells for approximately $37 on Amazon.com.

11.    Defendant Laundress set itself apart in the competitive cleaning and laundry product market through a widespread marketing campaign emphasizing purported natural, non-toxic, eco-friendly, and "green" cleaning products that do not contain, or contain minimal, chemicals and allergens, including on labeling which highlights the Products as "Non-toxic, biodegradable, and allergen-free:"

12.    Defendant highlighted Laundress Products on social media as non-toxic, environmentally friendly, and safer, using hashtags like #greencleaning, #plantderived, and #ecoconscious to further the message that the Products are non-toxic and offer an environmentally focused cleaning experience.

13.    Defendants' marketing successfully cultivated a loyal customer base of consumers (including Plaintiff) who seek non-toxic cleaning products and are willing to pay a substantial price premium to obtain non-toxic, supposedly safer cleaning products. Indeed, consumers are known to fill entire shelves at home with the Products.

17.    Since at least January 2021, the Products contained various bacteria that can cause serious and life-threatening adverse health issues, including *Burkholderia cepacia* complex,

*Klebsiella aerogenes* and multiple different species of *Pseudomonas*. The risk of serious infection and even death is particularly concerning for immunocompromised individuals who are highly susceptible to bacterial infections.

18.    From at least January 2021 until November 2022, Defendants failed to disclose that the Products contained dangerous bacteria or were at unreasonable risk of containing dangerous bacteria even though Defendants knew of those risks long before November 2022 based on consumer reports of *Pseudomonas* infections; Defendants' sophistication and internal controls; the substantial length of the contamination (at least from January 2021 until September 2022); and the enormous number of Products impacted (8 million units).

19.    Defendants failed to disclose and actively concealed the risk of bacterial contamination to prevent a nosedive in sales and protect Laundress's business. Defendants understood that a systemic design and/or manufacturing defect in the Products rendered the Products nonmerchantable and that disclosing the risk of bacterial contamination would jeopardize Laundress's existence.

20.    From at least January 2021 until November 2022, Defendant misleadingly represented on Product labels that the Products were "Nontoxic, biodegradable, and allergen-free" when the Products were contaminated with, or were at unreasonable risk of being contaminated with, a highly toxic cocktail of bacteria. During that same time, Defendants universally presented Laundress as a manufacturer, distributer, and/or seller of premium cleaning Products that were natural, non-toxic, and better for the environment when Defendants understood that the Products were contaminated with toxic bacteria and/or at an unreasonable risk of toxic bacterial contamination due to systemic and readily apparent Product design and manufacturing defects.

21.    From at least January 2021 until November 2022, Defendants placed at least eight (8) million potentially contaminated products into the stream of commerce, placing millions of individuals including Plaintiff at substantial risk of bacterial infection and even death. Defendants' misconduct presented a substantial and unjustifiable risk of injury to consumers and provided no countervailing benefit to consumers considering the severe risk of injury and death.

22.    The duration and scope of the contamination at issue in this case (every existing Product for 250 Product lines) strongly indicates a catastrophic or systemic failure in the Products' design and specifications or Defendants' manufacturing processes. Defendants have still not resumed commercial sale of Products even though Defendants notified consumers to stop using the Products over 8 months ago.

II.    **The Recall**

23.    On November 17, 2022, The Laundress posted a "safety notice" on its website and social media pages with the following message:

> This safety notice is to inform you to immediately stop using all The Laundress products in your possession. We have identified the potential presence of elevated levels of bacteria in some of our products that present a safety concern.
>
> Based on our investigation to date, we are not aware of any adverse health impacts related to this issue.
>
> ***
>
> We will communicate an update about the products impacted and how to obtain a reimbursement or replacement as soon as possible.
>
> The Laundress Team.

24.    Upon information and belief, Defendants made those admissions due to accumulating consumer injury reports; intervention by the Consumer Product Safety Commission ("CPSC") or other regulatory entities; and/or because Defendants knew that its competitors had

already disclosed or were soon going to disclose and recall cleaning and laundry products based on the risk of bacterial contamination. The timing of these recalls along with the involvement of the CPSC cannot be a coincidence. Instead, in November and December 2022, Defendants decided to disclose the risk of bacterial contamination to avoid the severe consequences stemming from consciously disregarding that risk and continuing to sell adulterated and unreasonably dangerous Products.

25.     On December 1, 2022, Defendant Laundress recalled approximately 8 million of The Laundress products that were contaminated with bacteria such as *Burkholderia cepacia* complex, *Klebsiella aerogenes*, and multiple different species of *Pseudomonas*.

26.     *Pseudomonas* are known to be highly toxic bacteria that can cause serious infections, severe tissue damage, pneumonia, and septicemia. *Klebsiella aerogenes* exposure also presents a risk of death, with one study suggesting a 34% mortality rate.

27.     *Pseudomonas* are known as a "superbug" due to their high mutation rate and antibiotic resistance characteristics. Antibiotic resistance is one of *Pseudomonas Klebsiella aeruginosa*'s most dangerous aspects. In 2017, the World Health Organization ("WHO") listed *Pseudomonas Klebsiella aeruginosa* as one of twelve antibiotic resistant bacteria that "pose the greatest threat to humanity."

28.     *Pseudomonas* can survive on inanimate surfaces for months and can be transmitted through airborne exposure and skin contact.

29.     *Pseudomonas* are especially dangerous and life-threatening to immunocompromised individuals, especially in the context of inhalation and skin ingestion.

30.     *Klebsiella aerogenes* is an opportunistic bacterium that can infect the respiratory tract, urinary tract, and even the central nervous system.

31.     *Klebsiella aerogenes* have antibiotic resistant characteristics and can be spread through airborne exposure and skin contact.

32.     The recalled The Laundress products were identified by lot codes.

33.     The Laundress products that Plaintiff purchased and used matched the recalled lot codes. Plaintiff purchased these Laundress products between January 2021 and September 2022.

34.     On its recall website, www.thelaundressrecall.com, Defendant Laundress expressly acknowledges that "[p]eople with weakened immune systems, external medical devices, and underlying lung conditions who are exposed to the bacteria fact a risk of serious infection that may require medical treatment."

35.     The risk that the Products were susceptible to bacterial contamination was readily foreseeable to and detectable by Defendant. The risks of bacterial contamination have been known and extensively studied in the manufacturing industry long before the contamination here.

36.     The Products' unique attributes make them particularly susceptible to bacterial contamination. *Pseudomonas* and *Klebsiella* are citrate positive. Similarly, *Burkholderia cepacia* digest oils and tolerates high salinity. In turn, the Products contain citrus-based chemicals and contain other ingredients, including essential oils, that greatly promote bacterial growth. The Products thus provide a rich medium that favors bacterial growth due to the presence of water and citrus-based and organic/inorganic ingredients that bacteria use as an energy source.

37.     To the extent Defendant's Products do not contain the foregoing ingredients, the Products are at an unreasonable risk of cross-contamination due to overlapping manufacturing processes, a cross contamination risk Defendants should have been aware of long before the contamination at issue.

38.     Based on the foregoing, Defendants were obligated to design and formulate the Products to prevent the foreseeable risk of bacterial contamination.

39.     Defendants were also required to manufacture the products to prevent the foreseeable risk of bacterial contamination, including by implementing rigorous quality control measures that have long been understood to prevent microbial contamination during manufacturing processes, including:

a.      Design of manufacturing processes that minimize microbial contamination;

b.      Microbial risk assessment of raw materials and finished ingredients;

c.      Development of effective audit checklists focused on microbial control;

d.      In-person audits of production;

e.      Supplier quality agreements established with a focus on microbial control;

f.      Control of storage conditions post-production, warehouses, and during transit;

g.      Effective maintenance and hygiene of facilities and equipment;

h.      Effective cleaning of equipment and facilities;

i.      Control of containers used to store and ship materials;

j.      Control of supply chain, water systems, and wastewater and waste;

k.      Development of pasteurization or sterilization processes;

l.      Development of microbial test methods and specifications; and

m.      Effective investigation of microbial contamination.

40.     Defendant Laundress had exclusive knowledge of their products contents and knew or should have known that its products purported to be "non-toxic" were the exact opposite.

41.     Defendant Laundress knew or should have known that its targeted consumer base, including Plaintiff, sought out its "non-toxic" products due to specific health-related concerns.

8

42.     Defendant Laundress knew or should have known that by distributing its toxic products to consumers caring for immunocompromised individuals, such as Plaintiff, fatal consequences would result which occurred in this case.

43.     Defendant Laundress knew or should have known that consumers, such as Plaintiff, would continuously use the product throughout their households, including but not limited to on their clothes, on their dishes, on their bedding, and on their external medical devices, increasing the likelihood that someone would come into close proximately and/or direct contact with the toxic bacteria.

III.    **Plaintiff's Purchase and Use of the Products**

44.     Plaintiff purchased the Products based on Defendants' false and misleading representations that it sold natural, non-toxic, and environmentally friendly and cruelty-free premium Products, misrepresentations or misleading partial truths given that the Products contained, or were at unreasonable risk of containing, toxic bacteria. Moreover, the Products did not disclose that the Products contained bacteria (in the ingredient section or otherwise); did not disclose the risk of bacterial contamination due to systemic Product design and/or manufacturing defects; and provided no warnings or instructions regarding the risk of bacterial contamination, the presence of bacteria, or the signs of, and what to do if a user suspected, an infection.

45.     When Plaintiff purchased and used the Products, he reviewed the inadequate Product labeling and instructions and relied on Defendants' misrepresentations and omissions about the Products, including misleading and incomplete representations that the Products were "non-toxic" and omissions regarding the presence of, or unreasonable risk of, bacterial contamination.

46.     Plaintiff reasonably relied on Defendants to sell products that are safe and free from harmful substances including harmful bacteria, and to truthfully inform and warn about Product dangers promptly and clearly. Plaintiff would not have purchased and used worthless Products and would not have spent money and lost property attempting to remediate bacterial contamination if Defendants disclosed the risk that the Products were contaminated with dangerous bacteria. Furthermore, Plaintiff would not have suffered physical injuries if Defendants disclosed the truth. Consequently, Plaintiff suffered injuries and damages due to Defendants' dangerous, deceptive, and unfair business practices.

47.     Plaintiff suffered damages and injuries after purchasing and using contaminated and worthless Products. Plaintiff suffered significant skin lesions on his face that were resistant to antibiotics.

48.     Plaintiff underwent skin cultures which confirmed his lesions were a result of bacteria, including *Klebsiella aerogenes.* The *Klebsiella aerogenes* identified in Plaintiff's skin cultures, was one of the same bacteria Defendants had identified as being present in The Laundress products purchased by Plaintiff.

49.     Plaintiff's serious skin lesions persist to this day and will result in permanent scarring of his face.

## COUNT I
## STRICT PRODUCTS LIABILITY: DESIGN DEFECT

1-49.   Plaintiff realleges and incorporates paragraphs 1-49 as paragraphs 1-49 of Count I of the Complaint.

50.     Defendants are the manufacturer, distributor, and/or seller of the Products.

51.     A manufacturer, distributor, or seller may be held strictly liable for placing a defective product on the market if the plaintiff's injury results from a reasonably foreseeable use

of the product, including injuries caused by a design defect that renders the product unreasonably dangerous for its intended use.

52.    A design defect exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective under the consumer expectation and/or risk-utility test.

**Consumer Expectation Test**

53.    The Products' design fails the consumer expectation test, which requires a product to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

54.    Here, the facts permit an inference that Plaintiff could form minimum safety assumptions about the Products, including that the Products were safe and not contaminated with bacteria and would not cause bacterial infections and other related injuries when used for their intended cleaning purposes.

55.    The Products did not meet Plaintiff's safety expectations. Although the Products are designed for repeated use and for generally applicable cleaning and laundry purposes throughout the home, contain water and other ingredients that promote bacterial growth, the Products did not contain a preservative or biocidal or antimicrobial agent; contained inadequate amounts of preservatives or biocidal or antimicrobial agents; contained an inadequate preservative profile; and/or lacked biocidal treatment of raw materials, ingredients or finished Products.

56.    The use of preservatives and biocidal or microbial agents and treatments are ubiquitous throughout the cleaning product industry, promote shelf-life, product integrity, and prevent bacterial contamination. The use of preservatives and biocidal or microbial agents or

treatments do not alter the composition of cleaning products and are economically feasible and necessary considering the risks posed by product contamination and degradation.

**Risk-Utility Test**

57.    The Products' design fails the risk-utility test. A product is defective under the risk-utility test if the plaintiff demonstrates that the product's design proximately caused his injury and that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such a design. The relevant factors generally include: the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design.

58.    Plaintiff used the Products as intended and as Defendants directed for cleaning and laundry purposes and suffered bacterial infections and related injuries due to the Products' bacterial contamination.

59.    In light of the relevant factors, on balance, the benefits of the challenged design (one without preservatives/biocidal/antimicrobial agents) far outweigh the risk of danger inherent in such design, including the gravity of the danger posed by the risk of bacterial contamination; the inevitability that bacterial contamination; the mechanical and economic feasibility of including preservatives/antimicrobial/biocidal agents and treatments; the low financial cost of an improved design; and the total lack of adverse consequences to the Products and consumers that would result from an alternative design.

**Reasonable Alternative Design**

60.    The unreasonable risk of bacterial contamination stemming from the Products' defective design could have been reduced or avoided entirely by the adoption of a reasonable alternative design, including the addition of a preservative or antimicrobial or biocidal agent.

61.    The Products' design defect (the lack of preservatives/biocidal/microbial agents or treatments and unreasonable susceptibility to bacterial contamination) existed when the Products left Defendants' hands, and Plaintiff did not alter or modify the Products and used the Products as directed and in a reasonably foreseeable manner and suffered injuries, including bacterial infections and related injuries due to the Products' bacterial contamination.

**COUNT II**
**STRICT PRODUCTS LIABILITY: MANUFACTURING DEFECT**

1-49.    Plaintiff realleges and incorporates paragraphs 1-49 as paragraphs 1-49 of Count II of the Complaint.

50.    Defendant is the manufacturer, distributor, and/or seller of the Products.

51.    A manufacturer, distributor, or seller may be held strictly liable for placing a defective product on the market if the plaintiff's injury results from a reasonably foreseeable use of the product, including an injury caused by a manufacturing defect.

52.    A manufacturing or production defect occurs when a product is manufactured in a substandard fashion or when a product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line. The "manufacturing defect" theory posits that a suitable design is in place, but that the manufacturing process deviated from that design, rendering a product that is ordinarily safe dangerous so that it causes harm.

53.    Here, at the time the Products left Defendants' hands, the Products deviated from Defendants' intended result/design/specifications or deviated from other seemingly identical models, in one or more of the following ways:

a.    The Products contained contaminated raw materials, water or other ingredients leading to bacterial contamination;

b.    The Products and/or their constituent ingredients were cross contaminated by human or animal contact or raw materials, water or other ingredients leading to bacterial contamination;

c.    The Products' manufacturing and storage facilities were not kept sufficiently clean or were subjected to improper or inadequate hygiene techniques, leading to bacterial contamination;

d.    The Products were subject to inadequate or improper quality control, testing, and/or audit procedures, leading to bacterial contamination;

e.    The Products were subject to inadequate or improper shipping or storage conditions, leading to bacterial contamination; and/or

f.    The Products did not contain or receive the adequate or intended amount of preservatives/antimicrobial/or biocidal agents or treatment or contained or received an improper or inadequate preservative/biocidal/antimicrobial profile.

54.    Defendants' Products suffered from a manufacturing and or design defect because they were contaminated with bacteria; caused Plaintiff's injuries; and were recalled by Defendant due to safety concerns. Discovery will ultimately reveal the precise nature of the Products' design or manufacturing defect, but Defendant cannot avoid liability because it alone possesses knowledge and evidence of the source of the Products' contamination.

55.    The Products' manufacturing defect existed when the Products left Defendant's hands, and Plaintiff did not alter or modify the Products.

56.    Plaintiff used the Products as directed and in a reasonably foreseeable manner and suffered injuries, including bacterial infections and related injuries.

57.    The Products' manufacturing defect proximately caused and was a substantial factor in causing Plaintiff's injuries, including bacterial infections and related injuries. Further, Defendants' actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

58.    Plaintiff suffered injuries and harm because of Defendants' misconduct in an 9

**COUNT III**
**STRICT PRODUCTS LIABILITY:**
**FAILURE TO PROVIDE ADEQUATE WARNING**

1-49.    Plaintiff realleges and incorporates paragraphs 1-49 as paragraphs 1-49 of Count III of the Complaint.

50.    Defendants are the manufacturer, distributor, and/or seller of the Products.

51.    A manufacturer, distributor, or seller may be held strictly liable for placing a defective product on the market if the plaintiff's injury results from a reasonably foreseeable use of the product, including an injury caused by failure to warn or provide adequate instructions.

52.    A Product may be found defective within the general strict liability rule and its manufacturer or supplier held strictly liable because of the failure to provide an adequate warning or instruction where the manufacturer knew or should have known of the risk at the time of manufacturer.

53.    Whether a warning is adequate generally depends on several factors, among them the normal expectations of the consumer as to how a product will perform, degrees of simplicity or complication in its operation or use, the nature and magnitude of the danger to which the user is exposed, the likelihood of injury, and the feasibility and beneficial effect of including a warning.

54.    Here, Defendants knew of or should have known of the risk that the Products were contaminated with bacteria or were at risk of bacterial contamination based on systemic flaws in Product design or manufacturing.

55.    The risk that the Products were contaminated or at risk of bacterial contamination due to inadequate Product design and manufacturing methods presented a substantial danger to Plaintiff and other consumers when the Products were used in an intended or reasonably

15

foreseeable way, including for cleaning purposes, and reasonable consumers, including Plaintiff, would not have recognized those potential risks and had no reason to know of those potential risks.

56.    The Products manufactured, distributed, and/or sold by Defendants were defective due to inadequate warnings or instructions because Defendant failed to adequately warn consumers of contamination risks, including warnings that:

a.    The Products were contaminated with bacteria;

b.    The Products were at unreasonable risk of being contaminated with bacteria due to deficiencies in Product design and manufacturing methods and reports from other consumers or competitors; and

c.    Potential signs of bacterial infection and what to do if a bacterial infection or contamination was suspected, including to stop using the Products immediately and consult a doctor.

57.    Defendants' inadequate or absence of the foregoing warnings and directions were a substantial factor in causing injuries to Plaintiff's injuries. Plaintiff reviewed Product labeling and instructions and used the Products as directed without any knowledge the Products were at risk of bacterial contamination and could cause injuries because Defendants did not include any warnings or instructions regarding those risks. Plaintiff would not have purchased or used the Products had Defendants included proper warnings and instructions on the risks of bacterial contamination.

58.    The Products' failure to warn or properly instruct on the risks of bacterial contamination proximately caused and were a substantial factor in causing Plaintiff's injuries, including infections and related injuries stemming from the Products' bacterial contamination. Further, Defendants' actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

59.     Plaintiff suffered injuries and harm because of Defendants' misconduct in an amount to be determined at trial.

## COUNT IV
## VIOLATION OF ILLINOIS CONSUMER
## FRAUD STATUTE 815 ILCS 505/2

1-49.    Plaintiff realleges and incorporates paragraphs 1-49 as paragraphs 1-49 of Count IV of the Complaint.

50.     Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, prohibits "unfair or deceptive acts or practices" in relationship with any trade or commerce.

51.     Such unfair or deceptive acts or practices include the "misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." *Id.*

52.     Defendants, in their advertising, marketing, and labeling of the Products, made false and misleading advertising claims that deceived consumers as to their safety.

53.      In reliance on these false and misleading advertising claims, Plaintiff purchased and used the Products without the knowledge they contained toxins that caused, or greatly increased the risk of, serious injury or death, to users of the Products.

54.      Defendants knew or should have known that its labeling, advertising, and marketing was likely to deceive consumers.

55.     Plaintiff suffered injuries and harm because of Defendants' misconduct in an amount to be determined at trial.

## COUNT V
## NEGLIGENCE

1-49.    Plaintiff realleges and incorporates paragraphs 1-49 as paragraphs 1-49 of Count V of the Complaint.

50.     Between 2019 and 2022, Defendants designed, manufactured, developed, tested, labeled, marketed, sold, supplied and/or distributed The Laundress cleaning products, which were marketed as luxury, non-toxic cleaning products.

51.     As described in more detail above, Plaintiff purchased The Laundress cleaning products and used them for their intended purposes.

52.     Defendants had a duty to provide safe, non-toxic cleaning products to Plaintiff as they expressly marketed.

53.     Unbeknownst to Plaintiff, Defendants breached that duty when it was negligent in the manufacturing and/or design of The Laundress cleaning products and permitted the products to become contaminated with hazardous bacteria as described in more detail above.

54.     As a foreseeable direct and proximate result of Defendants' negligence as described above, Plaintiff suffered severe illness, from which he suffered permanent injuries.

<u>COUNT VI</u>
**BREACH OF IMPLIED WARRANTY**

1-49.   Plaintiff realleges and incorporates paragraphs 1-49 as paragraphs 1-49 of Count VI of the Complaint.

50.     Defendants made representations to the public, including to Plaintiff, by advertising, packaging, labeling, ingredient lists and other means, that the Products were "Nontoxic, biodegradable, and allergen-free" and did not contain bacteria such as *Burkholderia cepacia* complex, *Klebsiella aerogenes* and multiple different species of *Pseudomonas*. Those promises and related promises became part of the basis of the bargain between the parties and thus constituted express warranties.

51.     Thereon, Defendants sold the goods to Plaintiff, who bought the goods from Defendants. Plaintiff reviewed and relied on Defendants' labeling, representations, and warranties

18

when purchasing and using the Products, including Defendants' warranties on Product labeling and in ingredient lists that the Products were "Nontoxic, biodegradable, and allergen-free." Plaintiff had no reason to believe the Products were contaminated.

52.     However, Defendants breached the express warranty in that the goods were contaminated with bacteria or at unreasonable risk of being contaminated with bacteria. As a result of this breach, Plaintiff in fact did not receive goods as expressly warranted by Defendants.

53.     At least since January 2021, Defendants were on notice of its warranty breaches through interactions with regulatory agencies; at least eleven (11) consumer reports of injuries caused by the Products' bacterial contamination; and from other external and internal sources, including lawsuits arising from the Products' bacterial contamination.

54.     Plaintiff was not required to provide Defendants with notice of its warranty breaches to the extent Defendants were acting as manufacturers of the Products; based on futility; and/or because Defendants were on notice of its breaches from other sources (as alleged above). However, in an abundance of caution, Plaintiff provided Laundress's with notice via electronic mail in the fall of 2022, outlining the nature of Laundress's warranties and breaches and making a demand for relief. In his notices, Plaintiff provided Defendants with an opportunity to cure its warranty breaches to no avail, as Defendants have not offered to compensate Plaintiff for his physical injuries described in this Complaint.

55.     Privity exists between Plaintiff and Defendants to the extent Plaintiff purchased Products directly from Defendants or their agents.

56.     To the extent Plaintiff did not purchase Products directly from Defendants, privity between Plaintiff and Defendants is not required because: (1) Defendants' warranties were included in public advertising and sales literature; (2) Plaintiff reviewed and relied on Defendants'

labeling and ingredient lists warranting that the Products were "Nontoxic, biodegradable, and allergen-free" and did not contain bacteria; (3) Plaintiff was personally injured by the Products; and/or (4) the Products were consumer merchandise, were sealed, and/or contained a dangerous toxin. Moreover, Plaintiff was the known end purchasers of the Products; the Products' implied warranties were intended for Plaintiff's immediate benefit; and Plaintiff was the intended third-party beneficiaries of the warranties between Defendants and the retailers who ultimately sold the Products to Plaintiff. As a result, Defendants have a duty to compensate Plaintiff for the warranty breaches.

57.    Defendants' attempts to disclaim or limit the warranties vis-à-vis consumers are unenforceable based on vagueness, inconspicuousness, and unconscionability. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold a defective product without informing consumers about bacterial contamination and/or the substantial risk of bacterial contamination. In addition, a gross disparity in bargaining power existed between Defendants and Plaintiff, as only Defendants knew that the Products contained toxins at the time of sale and that the devices were not of merchantable quality.

## COUNT VII
## BREACH OF IMPLIED WARRANTY

1-49.    Plaintiff realleges and incorporates paragraphs 1-49 as paragraphs 1-49 of Count VII of the Complaint.

50.    Defendants, as the manufacturer, marketer, distributor, and/or seller of the Products, impliedly warranted, among other things, that the Products were merchantable, in that: (a) the Products would pass without objection in the trade under the contract description; (b) the Products were of fair average quality within the description; (c) the Products were fit for the

ordinary purposes for which such goods are used; and (d) the Products conformed to the promise or affirmations of fact made on the containers or labels if any.

51.     Defendants breached the Products' implied warranties because the Products could not pass without objection in the trade under the contract description; the Products were not of fair or average quality within the description; the Products were unfit for their intended and ordinary purpose; and the Product did not conform to promises and affirmations of fact on the labeling including labeling and ingredient lists warranting that Products were "Nontoxic, biodegradable, and allergen-free" and did not contain bacteria. The Products were not merchantable and defective in that they contained ingredients that made the Products unreasonably dangerous, and as such are not generally recognized as safe for consumer use.

52.     Moreover, when Defendants offered and sold the Products, Defendants had reason to know that the Products would be used for cleaning and laundry purposes and that Plaintiff was relying on Defendants' skill or judgment to select or furnish suitable goods for cleaning purposes.

53.     Instead of providing goods fit for cleaning purposes, the Products posed an unreasonable risk of bacterial contamination and personal injury. Plaintiff purchased the Products in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose. Plaintiff did not receive the goods as impliedly warranted by Defendants to be merchantable.

54.     The Products were not altered by Plaintiff.

55.     The Products were nonconforming and defective when they left the exclusive control of Defendants.

56.     Defendants knew that the Products would be purchased and used without additional testing by Plaintiff.

57. The Products contained dangerous, undisclosed ingredients and were unfit for their intended purpose, and Plaintiff did not receive the goods as warranted.

58. As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff has been injured and harmed because: (a) they would not have purchased the Products or would not have purchased the Products on the same terms if they knew that the Products contained the toxins, making it unsafe for consumer use; (b) the Products do not have the characteristics, uses, or benefits as promised by Defendants; and (c) Plaintiff spent substantial time and money attempting to remediate bacterial contamination and suffered physical injuries after using the Products.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

Respectfully submitted,

By: _____
One of Plaintiff's Attorneys

Michael L. Gallagher
GALLAGHER LAW OFFICES, LLC
ARDC#: 6281432
161 N. Clark Street, Suite 3050
Chicago, IL 60601
(312) 910-5050
mlg@gallagherinjurylaw.com